Good morning, Mr. Campbell, Mr. Potter. I will call the case now of United States v. Powell-Ryder, number 20-2617. Mr. Campbell. Morning, your honors. Matt Campbell on behalf of Mr. Keenan Powell-Ryder. With the court's permission, I'll remain seated as my computer is set up to view me seated. I'd like to reserve five minutes for rebuttal, and I will start with the mootness issues and the court's focus letter from yesterday and then turn to the merits of the breach claim. The cases identified in the court's focus letter demonstrate a strong trend against finding cases moot and support the court's jurisdiction over Mr. Powell-Ryder's appeal in this matter. The Supreme Court in the Mission Product Holdings case from 2019 addressed the use of trademark- I don't think I have that letter. I'm sorry? Go ahead. Addressed the use of trademark in bankruptcy proceedings, so obviously it's not factually similar to our situation, but most importantly, the Supreme Court made it clear that a case is moot, quote, only if it is impossible for a court to grant any effectual relief whatever, end quote, and noted that ultimate recovery being uncertain or unlikely doesn't make a case moot. And that courts can adjudicate disputes whose, quote, practical impact is unsure at best, and it cited the Chafin case, which the court had also mentioned. Chafin was a dispute over child custody under the International Child Abduction Remedies Act, and it's similarly held that a case becomes moot only when it's impossible to grant any effectual relief. As long as the parties have a concrete interest, however small, in the outcome of litigation, the case is not moot. Mr. Campbell, it seems that these cases only come into play if we are looking at collateral consequences and whether there's a requirement of a likelihood or mere possibility of collateral consequences. But our cases also say that if what's at issue is simply the sentence that is currently being served, there's no mootness issue at all. And that, which brings me to the question about what is really at issue here? And specifically, given that the sentence in hearing was held in August of 2020, Mr. Paul Ryder was sentenced to, I believe, 21 months imprisonment, and he was released a couple weeks ago. He's only served about eight months. So has his release been to serve the remainder of that prison term on home confinement, followed by the two years of supervised release? Or has he been released and is now commencing the two years of supervised release? Your Honor, there was actually an extended period of, I'll call it, pre-trial detention prior to the sentencing hearing in August of 2020. So he has been released from his Bureau of Prisons' incarcerative sentence. He is now serving his two-year term of supervised release. The two-year term of supervised release under the statute is a mandatory term. So we're not in the classic situation where an individual could ask for a lower term of supervised release. That's why we believe that several of the other cases that the Court had mentioned in its focus letter are particularly instructive, because while Mr. Paul Ryder might not be able to seek less than the mandatory minimum two-year term, under 3583E, he could seek a reduction of his supervised release term once he completes one year. And the Court had mentioned both the United States v. Purdue case out of the Seventh Circuit in 2018, as well as the United States v. Epps case out of the D.C. Circuit in 2013. And in both of those cases, the Courts found that as long as there was some potential benefit, that would be good enough to give jurisdiction. And in those in any 3583E motion to reduce or modify terms, and both of those Courts found that that was enough to confer jurisdiction. But why is the 3583E motion premature at this stage? Say we granted the very release you seek and conclude that there was a breach, that the remedy must be a vacate and remand. In terms of the resentencing on supervised release, wouldn't even a different district judge have to impose two years of supervised release now, and you would have to wait, or your client would have to wait a year to then file a 3583E motion? Well, our position would be, Your Honor, that if we were to prevail on the breach claim, we would have a resentencing hearing with potentially a sentence instead of 21 months of 10 months, as we asked for. If that were to happen, he would have overserved by 11 months. Admittedly, the Court could not grant relief on a 3583E motion at this moment. However, the case law is not 100% clear that the motion could not be filed as of now. But we do believe that under the cases that I've been talking about, that the possibility that the 3583E motion would be granted based upon a finding by this Court, well, a finding by this Court that there was a time of 11 months, which the courts have found to be a strong consideration in favor of a 3583E motion. Mr. Campbell, isn't that argument too speculative? Doesn't that fall into the Kissinger line of cases? You're asking us to speculate what the Court might do if, in fact, the 3583E were filed one year after, or next April 24th, so to speak. I don't believe it is that type of speculation because, again, if we look at Mission Product Holdings, it's not asking whether relief is likely. It's not asking whether it's certain. It's simply saying, is it possible for the Court to grant any effectual relief? And it is possible for this Court to grant effectual relief by finding a breach. Upon that breach, the case... Wait, which Court? Our Court or the District Court? This Court can grant effectual relief by finding a breach and remanding for resentencing. At that point, Mr. Powell-Ryder will then have another chance for the 10-month sentence because the government... All right, let's suppose we issued an opinion or an order tomorrow. Yes. To make it simpler, as soon as we did it on June 1st and agreed with you, it said there was a breach in the plea agreement. We were sending it back to the District Court. Your client's already served 21 months in prison, and as of June 1st, he would have about six weeks unsupervised release. What would your position be as to whether or not the supervised release period should be reduced from two years to less than two years? What would it be at that point? Your Honor, candidly, I don't believe that we could, at a resentencing, take the position that the Court could give him less than two years. Okay. I think there would have to be a 3583e motion filed to modify or terminate supervised release after one year. All right. Is there any... I know in your letter, when we first asked about mootness, your response made reference to bank time. Correct. You cited a case, United States v. Peppers, not to be confused with the United States v. Peppers from the Supreme Court, but an NPO from our court in 2019. Correct. It sort of insinuated that the concept of bank time was not permissible. Your Honor, I wanted to be fully candid with the Court. I didn't want to present an argument without referencing Peppers. However, I think that Peppers appears to be citing a line of cases that I think are called into question by mission product holdings, chafin v. chafin, and the like, in that it seems to be using that likely standard of relief, whereas I think that the mission product holdings and chafin hold that the question is not whether relief is likely. The question is whether it's impossible to grant any effectual relief. So while I recognize that Peppers exists, I don't believe that it was correctly decided, and I believe that the Court can look to mission product holdings, chafin, and even the discussion in United States v. Scripps, a published decision from this Court, which questioned some of that type of rationale and specifically referenced mission product holdings. Well, let me be more direct. Can you make a credit argument under the mandatory two-year supervised release language from 841? In other words, can you make a credit argument before the District Court, if you were able to get back before the District Court, to say, my client deserves to be given 11 months of credit from his excess prison time towards his supervised release term? Can you make that? You mean at sentencing to argue for, say, a 13-month term of supervised release as opposed to 24? Yes. Your Honor, I suppose that we could make the argument. I honestly can't say that it would be successful. Counsel, isn't that argument at this point foreclosed by United States v. Johnson? In a word, it would appear that way, yes. So I recognize that I think the avenue to jurisdiction is 3583E. I think that you have some problems. Because we can't grant the kind of relief that you're looking for, and neither really can the District Court on resentencing, but only on a new 3553 motion. Doesn't that fall into the category of collateral consequences of anything we might decide, rather than more direct relief? Your Honor, I think, obviously, I think there's a certain amount of overlap between the two considerations. But I think, again, if we look at the trend that we've been discussing, the trend is definitely to find that collateral consequences exist in all but the impossible situations. And what I'm suggesting here is we don't have those impossible situations. And I think that's exactly what the Perdue case and the Epps case said. Perdue and Epps both dealt with 3583E situations in which the defendants in those cases, one of them was actually a habeas petitioner, was not seeking to reduce his term of supervised release on resentencing. They were clear that it was a 3583E remedy that they sought. So we're not seeking anything different than what was found in the Perdue and Epps cases. They're on point. So we do believe the jurisdiction lies for that reason. There are other factors that are contributing to a isn't it possible that a year from now, given whatever has taken place in terms of conduct in prison or other other developments during that year, that there would never even be a motion filed? And what purpose would it serve for us to make a ruling that may or may not factor into a future motion that may or may not be filed? Well, you're right. Yes. I mean, it's always possible that something could happen that could lead to a situation where a motion is not filed. But I don't think that that's the inquiry. Because I think even in Chaffin and Mission Product Holdings, the courts were remanding for further proceedings in light of finding the things were not moved. So there's always a possibility that something won't materialize. But a finding that there was a breach here that gives Mr. Powell Ryder a new sentencing with a chance to receive a sentence of 11 months less has the benefit in 3583 E. It has the potential for bank time. It would also have the potential where worried to commit additional criminal conduct to lower his criminal history category. So it has these potential benefits. You haven't talked about. We haven't talked about Berkey versus Marbury from 2009. Are we still bound by that case? Your Honor, I don't think I have not found clear precedent stating that it has been overruled. However, I think it's discussion about the idea that there must be that injury has to be likely to be redressed by a favorable judicial decision has effectively been abrogated by the later cases of Chaffin and Mission Product Holdings. And I would also point the court to the discussion in United States versus scripts. Specifically, I believe that's at page 631 in footnote three, where it talks about that exact factor. So while it may not clearly be overruled, I think it's very likely been abrogated. In United States versus Moshe lightest, the we set forth the framework to make the assessments about breach and and the right remedy when it comes to remedy and an appellant seeking specific enforcement, we held that that not an issue for us to decide in the first instance, but that the appropriate next step was remand to the district court for it to determine whether the proper remedy was to allow for withdrawal of the plea or resentencing. We've been discussing the resentencing option and what what potential benefit there would be if it went in that direction. Do I understand correctly from your briefing that Mr. Powell writer has waived any request to withdraw its plea if the case were to be remanded to the district court for it to determine the remedy? That's correct. Yes, your honor. Thank you. Yes. Well, we've gone over time. We'll also make sure your your your colleague has has equivalent time. And I wonder if you might address for us the issue of a breach itself. Yes, your honor. I can do that fairly quickly. Um, in regard to the issue of breach, our argument is rather straightforward, that the operative term of the plea agreement was found found at appendix 23. And it simply states if the defendant accepts a pre indictment plea by the date specified in the plea agreement and follows through on that plea, the government will recommend a sentence of 10 months, the lowest possible advisory guideline sentence range. That is the operative term. There were several sentences that preceded that outline potential guideline calculations. But the specific reference here was to 10 months. The government and the assistant United States attorney who negotiated this plea agreement after Mr. Powell writer had absconded, issued a sentencing memorandum in which he said that that was the operative term that the government would recommend 10 months. So the A. U. S. A. Who actually negotiated the plea agreement understood that the government was required to recommend 10 months. It was only after Mr. Powell writer was subsequently arrested and brought back that the government reversed its position initially recommended 27 months without credit for acceptance of responsibility after a motion to compel was filed by Mr. Powell writer. Do you recognize that at least from a timing standpoint that that first recommendation by the government was submitted to the court before it knew as a fact that Powell writer had absconded? Your honor, that's correct. But there's certainly nothing in the text or even the messaging of that memoranda that states anything like, well, if Mr. Powell writer doesn't show up, we will change our recommendation. The recommendation is very clear. And I think from the tone of it, it's clear that the government was sort of recognizing that it was on the horns of a dilemma, but it was stuck with what it wrote. And that may have been the bargain that Mr. Powell, your client would have received had he shown up, but when he didn't show up, what didn't that in effect constitute a breach of the plea agreement on his part? Well, again, your honor, I think the operative terms were, if he accepted a pre-indictment plea without filing motions, the government would recommend 10 months. That's what it said. If the government had wanted a plea. But doesn't it also uses the words follows through on that plea? I don't know how you can disassociate showing up for sentencing with following through on a plea. Well, your honor, I think first of all, the case law is clear that the government as the drafter is responsible for any ambiguities or... But you don't argue an ambiguity. I'm not arguing an ambiguity in regard to the... Well, then you can't make that argument. You can't make that argument on holding ambiguities against the government if you don't argue the ambiguity. Well, what I'm concerned with here is the notion of following through on the plea, because typically, and as was done in this case, one can see it when it looks at the plea agreement and when the signatures are dated. The plea agreement was signed, I believe it was June 13. It wasn't filed until approximately a week later after the government had signed it. So this phrase accepts a pre-indictment plea by the date specified and follows through on that plea simply refers to the fact that he went to the change of plea hearing and pled guilty. That's what that phraseology states. He followed through. Okay, your argument that 10 months controls, doesn't that read out sections 3J and 3M of the plea agreement? No, your honor, because section 3J refers to departures. Departures are a term of art relating to requests to be sentenced based on factors in the guidelines that don't come into play. That paragraph does not reference variances. So we were still authorized to request variances. And in fact, that's exactly what the plea agreement said. The 10 months was the government's So he was free to request a variance of any type. In regard to section M, section M is better understood as a general provision, similar to what was talked about in the Rivera case, where the government has the right to just argue the facts. And the phrase will recommend sentence within the applicable guideline range simply means the guideline range that the parties thought would be applicable. It does not state anywhere in paragraph M that it's the guideline range that the district court finds to be applicable. It simply says applicable, and the court and the parties believe that the applicable guideline range would be 10 to 16 months. So, and I would also counter that even if there was some contradiction again under Rivera, Rivera says the specific controls over the general, and here the specific is the 10 months. It's a very similar situation to what occurred in Rivera. Mr. Campbell, can I just clarify your answer to Judge Fisher about, if I heard correctly, when that initial government sentencing memorandum was submitted, whether the government was aware at that point that he had absconded? I thought from appendix 29 that that was information known to the government at that point. Your Honor, and perhaps I misunderstood the question. What I was trying to get across is the sentencing memorandum was obviously submitted prior to the sentencing hearing at which Mr. Powell Rider did not appear. That's what I understood the judge to be asking me. But yes, you are correct that the sentencing memorandum made it abundantly clear that everyone knew that Mr. Powell Rider was apparently in the wind. So that fact was well known at the time of the sentencing memorandum. I was addressing what I thought the question was, which was, had he failed to appear in court yet? And the answer to that was no at the time of the sentencing memorandum was filed. But the government made it abundantly clear that he was gone, that he had contacted probation. Probation couldn't get into contact with him. And I think at that point, everyone knew that he was not going to appear. And my response was simply that under those circumstances, there's no hint in the sentencing memorandum that the government's going to change its position once he doesn't show up in court. The government understood then that he had had to live with 10 months regardless of what happened afterwards. Do you agree normally in contract interpretation, we look to the four corners of the document and unless there's some like the statements of a prosecutor at a hearing or other documents that were submitted that might reflect on the party's intent, do we, whether you've made the argument or not, do we need to conclude that there is ambiguity here before we could take account of those statements and documents? Your Honor, I think as a general matter, if something is unambiguous, then the terms are what they are. And I think it's clear that to me, 10 months is unambiguous. So provided the court finds that unambiguous, then yes, there's no reason to go beyond the simple wording that the government will recommend 10 months, which is what it said it would do. I must, um, Judge Fischer or Judge Porter have further questions now. We'll, uh, we'll turn it over to Mr. Potter. Question. Thank you. Okay. Mr. Potter, we'll hear from you. Yes. Hi. Good afternoon. I'm a part of the United States. Good morning. Sorry. Morning. Good morning. I think the first issue that the court should focus on is the fact that in Mr. Powell writer's appeal, he's appealing his sentence. He isn't appealing the issue of whether or not 21 to 27 months and the ultimate decision of court to sentence him to 21 months is a correct sentence. He's appealing the fact that the government didn't ask for 10 months. And I think that's a big, huge issue in this case, because if for some reason this court decides that, um, this matter is moot, is not moot and, and, and, uh, sends the matter back to the court for sentencing, um, all that's going to happen on the sentencing is that the government would stand up and say, uh, based on a plea agreement, the defendant should be sentenced to 10 months. But the defendants has already agreed that 10 months is not an appropriate sentence for his by just the nature of the appeal that we are looking. Say, hypothetically, we, we, uh, disagreed with that and concluded that the government did engage in, and we can talk about this in a moment too, but the government did reach, uh, uh, its obligations under the plea agreement. Would at that point, would there be sufficient collateral consequences because with, with the filing of a 3583 E motion, uh, the chances of success there would be greater with a, uh, holding by this court that there had been a breach. Um, I believe that the, supposedly if he files a 3583 motion, which I'm not sure that he can, but if he does, and this court, uh, the district court addresses that issue again, district court is still bound to sentence this defendant to two years of supervised release. As for the statute, the statute is mandatory. So Mr. Paul Reiter cannot escape the fact that he is sentenced to two years of supervised release. But the district court has authority under 3583E1 to terminate that release early, correct? Um, arguably, uh, I'm, I'm not sure that with a mandatory minimum sentence under, under, um, 841, a mandatory minimum supervised release term that the court can modify that two years that the Congress says, this is unlawful. You cannot modify that. Now I understand if, if there was a different offense involved and the sentence and the supervised release came exclusively under 3582, then yes, 3582 provides an avenue after one year for a defendant to seek modification of his supervised release. But Mr. Paul Reiter's imposition of his supervised release comes on 841. I didn't find any cases where the court permitted a modification of a supervised release when the defendant was sentenced to the bare minimum under the statute. So what's your, what is your argument, uh, Mr. Putter? Uh, it, it seems to me that what you're saying is that they're using, that the defendant's using the breach to get around the appeal waiver. Okay. Yes. All right. Uh, what is, I'm trying to get specific, specifically, what is your argument as to where that leaves the defendant, even if there was a breach? Uh, well, if there was a breach and this court says we're going to throw out or kick out the plea agreement. And if the court decides to kick out or negate the plea agreement, so because the government breached, there is no plea agreement. Government, you breached the plea agreement. Uh, we're going to let Mr. Paul Reiter proceed as though there is no plea agreement. He can go to trial or, or not, or he can plea again without the benefits of a plea agreement. Well, in that case, he still has to face a district court judge and the district court judge is still bound to give him two years minimum supervised release. So that's the way around. Excuse me, Judge. Thank you. Why, why did you say a few minutes ago that you're not sure that he could even file a 3583 motion? Um, I don't know that I have found, um, any cases. I know the EPSTE, uh, EPSTE, uh, references the interplay between 3582 and 841. Um, but that was decided based on a, the 2002 amendment to the 841 statute that really, um, gives it some ability of, um, superseding the 3582. So when EPSTE, the court, even though EPSTE was a mandatory minimum sentence, that analysis was performed, uh, under the issue of whether or not the amendment to 841 was, uh, retroactive or prospective. The court never reached that. The court assumed that it was not retroactive, um, doing part, of course, because Mr. EPSTE was sentenced prior to 2002. So the court permitted, the court found that the issue was not moot with respect to whether or not Mr. EPSTE could proceed with his, uh, appeal. Uh, but that's not the case here. Uh, Mr. Trevor Ryder, uh, squarely is operating under the auspices of 841 for his supervised release. Um, and I don't think that it is permissible for a district court, uh, to modify that term using 3582 as the, as an avenue. I thought 3582 was an avenue to get around the mandatory minimum two years. Mr. DePotter, we, in the letter that we put out yesterday, we cited some cases, uh, for, for you to familiarize yourself with, uh, on, on this proposition. And, um, how, how is it in view of the Supreme Court statements in United States versus Johnson, uh, and, uh, in, uh, our decision, um, in profit, uh, as well as, uh, other courts of the United States to, uh, go below the mandatory minimum, uh, does not, it's not foreclosed by the terms of 3583E, uh, that it's, that's actually been preserved and that that is the proper mechanism for a defendant to use if they want to seek what used to be a successive, uh, prison time that was served. Uh, my reading of those cases, of course, Johnson says that there is no, there is no credit to, to, to be given that supervised release begins at the time of defendant's release from incarceration, but all of those other cases, um, there was a modification or an argument that it could be modified under 3582E. None of those cases involved a defendant that was facing a mandatory minimum sentence under 841E, where the supervised release was imposed subject to 841E as opposed to 3582E. So that's why I make, that's why I am making the argument that I am not certain that, um, if, if this matter is remanded that the district court can ignore the mandates of 30, of 841E and modify, uh, the defendant's sentence pursuant to 3582E. I haven't found cases, like I mentioned, EPS does involve a case where, um, single defendant received a five-year, a five-year mandatory minimum sentence under 841E, and the analysis there was the interplay between 841E and 3582E, and, uh, the court was addressing the issue of whether this new provision of 841E, uh, could be applied retroactive or would it have to be applied prospectively, and I think they came down that it had to be applied prospectively. So I'm not sure that that issue was ever resolved. Other than that case, the cases that the court references, um, Chaffin, Scripps, Johnship, uh, Perdue, none of those cases are similar to the facts in this case. None of those cases address the issue of, um, supervised release pursuant to 841E. I assume if, if that was, if that was a simple proposition that I would have been able to dig up, uh, cases to that effect, I think, I think in my letter brief, I cited to one two cases, one out of the Ninth Circuit, I believe, and another one that addressed the issue of mandatory supervision under 841E, and they came to the same conclusion that, uh, the supervised release under 841E is mandatory and that the defendant, if the issue was remanded, uh, could not modify his, um, 841 supervised release. What about foot, what about footnote four in the profit decision? Um, if I can have one second, Judge, let me try back there. Footnote four. Where it says, footnote four in profit says, the end of footnote four says, we have continued to recognize that a likely credit against defendant's term of supervised release for an excess term in prison still remains valid after Johnson. C. Jackson, 523 Fed 3rd. And I'm not, I'm not disagreeing with that. I'm not disagreeing with that. If, if, if in Powell Ryder's case, he was given, um, say, instead of the two year mandatory minimum, if he was given three years supervised release, then a district court at resentencing could sentence him to two years of supervised release, which would be consistent with, um, with 841 and 3582 and how it's applied. But I don't think my argument goes against footnote four, because I'm not arguing that there isn't an avenue to reduce a period of supervised release. My argument is if it's mandatory under 841, that I am not certain that that avenue exists. Couldn't the court, couldn't the court impose two years and give credit for 11 months? Um, I don't believe it can. Um, I believe that pursuant to Johnson, if, if the court were to do that, then the court would be saying that the defendant got credit. The period of time that he was sitting in jail, not in supervised release, that maybe he actually, that that 11 months should go towards his supervised release. And I believe that Johnson forecloses that. Okay. So for those reasons, I don't see that there is an avenue for Mr. Powell Ryder to receive any credit. Mr. Potter, I understand you disagree, but given our very recent decision in profit saying that there is still a credit that can be applied, uh, for an excess term of imprisonment and that Jack's cases like Jackson and Cotman remain good law, uh, aren't we bound to hold that those are, have not been abrogated by Johnson? No, I agree. Um, my, my, my only issue is, again, my argument is not that a district court cannot modify a condition. So the defendant over, over, over spent his time in jail, uh, and remand, uh, the court says you've stayed six months too long in prison. Um, I had sentenced you initially to whatever the, the supervised release was that the court can reduce. The court can say, um, I'm resentencing you and I am sentencing you to eight months of supervised release as opposed to whatever the initial supervised release was. That's, that's not really what the, what the court would be saying or did say in the context of cases like Jackson or Cotman. A credit would be an acknowledgement that there had been so many months already served of those two years that's required, right? So it's not, it's not imposing a sentence of less than two years. It's crediting the months that were excess service, uh, in imprisonment toward those two years. Yes. And, um, my position is again, uh, even for all cases where the defendant is not serving, um, the minimum supervised release under a statute which is here, 841, that of course the court can do that. But I don't know that the court can at a resentencing take the position that you served an additional eight months in prison. The statute says the minimum mandatory for supervised release is two years. Because you served an additional eight months in prison, I am going to resentence you and give you a one year and four months of supervised release. I understand the technical argument that the court is making that, that we're just going to call it a credit. And I don't know if this theory of credit on 841, um, is permissible when the actual supervised release is at the mandatory minimum provided under the statute. And I haven't found a case, all the cases I have found that I've read, yes, it speaks in terms of credit. It speaks in terms of reducing the supervised release because of overstaying in prison. But none of those cases to my recollection, uh, involved a defendant uh, serving a mandatory, serving a minimum sentence under 841. No. I'm not sure why a mandatory minimum, uh, would function differently under 841 than, than others. But, uh, certainly in the United States versus Spinelli, for example, the Sixth Circuit, uh, reached the same conclusion dealing with 841, uh, as the Fifth and, uh, D.C. Circuits and Sixth. Um, I'm sorry, Judge. Um, I can't, you are breaking up. Sorry. Uh, I, I, I'm not, I said, I'm not, I'm not sure. Maybe you can clarify why there would be any difference with 841, uh, the, the mandatory minimum supervised release under 841 versus the mandatory minimum release under other statutes, uh, so that the pronouncements of, the persuasive pronouncements of our, our Sister Circuits and our own statements in, in profit, uh, and Jackson and Kottman, uh, would, would seem to carry over. But the Sixth Circuit in the United States versus Spinelli was dealing with 841, right? Yes. And, um, I haven't read the Spinelli case, but I'm assuming that the defendant was sentenced to something other than the mandatory minimum period of supervised, supervised release. And then that, and the sentence in that period of time was reduced to something not below the mandatory permitted under the statute. That would be my argument, having not even read the case. But, um, but I understand the court's position. What, what's the difference between 841 supervised release and 3582 supervised release? But 3582 supervised release within the statute itself, it says how you can get out, get around any mandatory, um, period under 3582. Mr. Potter, um, the, the cases that we have, we, we, which we directed you on, on mootness, uh, generally deal with a situation where a defendant is challenging some aspect of the district court's, uh, sentence. The reasonableness of that sentence, uh, or, uh, is proper application of a, of a guideline provision, uh, for example, so that, uh, the, the, uh, we, we need to consider whether any relief can be granted and what relief were we to, uh, agree with their, their determination on, on the merits. Uh, here, what we're confronting, on the face of it is a, a, a claim for specific performance on the ground that the government breached the plea agreement. And our case law says that if you find that that's so, then the proper relief for us to grant is to vacate and remand. And for the district court at that point to determine what, if any remedy is appropriate, why doesn't that take us out of the realm of these cases entirely? Uh, because there is, there is relief that we are capable of granting upon, uh, concluding that the government breached the plea agreement. Um, to remand for the district court to assess what remedy it can provide. Um, if I understand the court's question, um, yes, I don't know that, um, if the matter is remanded, uh, maybe the instructions to the court might read something like remanded for the court to reconsider the, the breach. Or maybe the third circuit may have indicated to the, to the district court, we find that there was a breach. Um, and because we find that there was a breach, I'm sending it back for re-sentencing. Okay, well, if that was to a court and the court reconvenes, technically all that's going to happen is the government is going to stand up and say to the court, the government's plea agreement with the defendant, uh, we recommend a sentence of 10 months and the court can accept that or could reject it. Um, given the pre-sentence report and given the conduct of the defendant, the court still has to weigh all these factors into imposing a new sentence. And the original pre-sentence report had a, a guideline of 14 months. Um, so the court could, yeah, could sentence the defendant to 15 months incarceration, but I think 14 months is a 15 to 21 month sentence and the court could do that. But the court could also look to the case law and to the guidelines and how it interprets someone who absconds. And the court could say, I'm gonna, I have no choice, this is what the case law says, to increase the guideline range to 16. And still the court comes back to the same avenue, 21 to 27 months. Of course, there's no guarantee that that's what the court is going to do, but there was no disagreement at the, the, there was no disagreement at the, at the sentencing that the calculation of the guidelines, the enhancements, um, were correct, were incorrect. The court could depart downward. What are we, excuse me, what, what, what are we to, um, take of the, uh, evolving explanation, uh, and position of, of the government in the various sentencing memoranda? Uh, initially knowing he had absconded, taking the position that it was bound by the terms of the plea agreement to 10 months. And then the second one putting in a, another plea agreement that didn't, another, uh, a sentencing memorandum that, uh, with a different guideline calculation recommended the very top of that range. Uh, and then, uh, in third, upon the second suggestion, doesn't that suggest that the government, um, did understand what, uh, the agreement required 10 months in the plea agreement as non-existent and recommending the very top in different guidelines? Yes, I speak to the, the second, uh, memorandum, uh, where the government recommended the very top. Um, that we believe was, um, um, not in keeping with the language of the plea agreement. And, um, the government, obviously, when it filed that, uh, memorandum, um, was not focusing on the specific language in the plea and assumed that the acceptance of responsibility was breached and that the absconding, uh, was legitimate and, um, supported the additional two months for absconding. Uh, of course, uh, defense objected. And when we receive and read the defendant's objections, the government agreed. The government agreed because, again, in the plea agreement, we said that we will recommend the low guideline sentence. Obviously, 27 months was the high end and not the low guideline sentence. So we agreed when the defense objected that the government should withdraw that plea agreement. That's our sentencing memorandum. The initial, the initial sentencing memorandum was, um, a, another AUSA who originally, um, was responsible for this case. And obviously, um, we did our research after reading his memorandum and we decided that that memorandum was, um, not correct with what the understanding or what the plain understanding of the agreement was. Um, the final memorandum, we believe reflected the, the clear, plain language of the statute, the understanding of the parties, the expectation of Mr. Paul Ryder. And that is the one that we filed and ultimately defended, uh, when we got to sentencing. I imagine that the U.S. Attorney's Office, uh, in the Virgin Islands has, has since revised and updated its plea agreement, uh, to conform to, to those used by others, uh, that, that would, uh, preempt the situation that we, we are in now with this, this appeal. But when we look at the terms of, of this agreement as it was written, uh, don't you agree there is at least ambiguity, uh, in, in the terms, uh, for example, what it means to follow through with the plea? Uh, yes. Um, we have in fact revised over three agreements, uh, in large part because of this case. So, um, the, the language is more explicit, it's more detailed with respect to what the defendant's responsibilities are, um, uh, once he agrees to plead guilty. So that's, that's in fact the case. Now in terms of ambiguity, the recommendation of 10 months was based again on the guideline range and what the man, and what the minimum, uh, what the low guideline range was with respect to the offense level. So the 10 months was not something that we pulled out of thin air, that we had some back and forth on. The 10 months was in fact the low guideline sentence at the time that the government entered into the plea agreement with Mr. Powell Ryder. We don't believe that 10 months is a magic number. We think that the magic word is low guideline sentence, uh, which just so happens to be 10 months at the time. But the reasonable expectation for Mr. Powell Ryder was that the government is going to recommend a low guideline sentence if in fact his offense level is 14. It did not turn out that his offense level was 14, uh, sorry, his offense level was, was ultimately 12. It was in fact 16, and consistent with what we believe the plea agreement was. We sentenced, we recommended his sentence at the low guideline. Initially it was 15 months, but after being pushed by the court, um, it was 21 months. Thank you, Mr. Potter. I think we, we've, uh, allowed you to, to go about the same amount of time, maybe a little more at this point than your colleague. Uh, so let me just ask if my colleagues have, have further questions before we let you go. Oh, okay. Thank you, Mr. Potter. Thank you. All right. I was muted. I appreciate the court's indulgence and I'll make this as quickly as the merits of the case with the question of mootness. And I think Mission Product Holdings and Chafin are pretty clear that that's not the inquiry we should engage in. In other words, whether the district court will ultimately grant us relief isn't the question. The question is whether we have a claim for relief, which for the reasons I already expressed, I believe that we do. But, but given that a year has not passed and a motion at this point would be premature, is, is there really relief that can be granted within the context of this case or, uh, with the termination of this case, um, is it, is it really a different proceeding down the road when Mr. Powell-Ryder, uh, might, uh, file, uh, 3583E1 motion? You're right. I don't, I, I think it's part and parcel. So I, I think relief at this stage is critical to a potential 3583E motion. And I think, um, that the Epson-Purdue case explained that and say how critical the information is that somebody over-served. So if this court were to find it moot, then it is now effectively law of the case that Mr. Powell-Ryder was correctly sentenced to 21 months. So at that point, if Mr. Powell-Ryder tried to file a 3583E arguing that he was incorrectly sentenced, law of the case would say it isn't. I suppose he could then try to file a 2255 or it might have to be a 2241, um, to try to say that he was incorrectly sentenced, but it's, it's doubtful that he would gain relief at that point. Um, so I, I think it is part and parcel, um, of this case without a decision on the merits here that would forestall, effectively forestall his 3583E motion. Um, a couple other points I do want to clear up. The government had stated there was no disagreement about the guideline calculations. That's not accurate. Uh, the question that Judge Malloy had asked the trial attorney was very specific. Uh, he asked, is there some basis that the judge could make certain findings regarding obstruction or lack of acceptance? And the trial attorney responded, Mr. Powell-Ryder's attorney responded, there is, yes, there is a basis that you could make that finding, but at no time did we ever say you should make that finding or we agree with that finding. I wanted to clear that up. Um, if I heard the government correctly, it admitted that it's 27 month recommendation was not, uh, not correct. That means it's a breach. So there's a breach. Then the government stated just now that it reckoned that in its, um, in its final memo, um, it made a sentencing recommendation that it believed was in line with the plea agreement. And that's what it stood by its sentencing. That's also not true. Uh, in the final sentencing memo, it recommended 15 months, which it argued was the low end of the guidelines. Um, at sentencing, the district court at the end of the transcript ultimately said, well, I find that the guideline range is 21 to 27 months, at which point the government then said, oh, okay, then I'll recommend 21 months. So the government, there's an additional change there where the government's final memo and its final recommendation of sentencing were not the same. Finally, um, I do want to point out in the government's talking about the 10 month recommendation, the correct language was not that that represents the low end of the guideline. It said in the plea agreement that 10 months is quote the lowest possible advisory guideline sentence range. The government frequently omits the word possible, but it is critical because that means that the plea agreement recognized the district court might not find that the guideline range was 10 to 16 months. It might find that it's 15 to 21. It might find that it's 21 to 27, but that's not what the plea agreement called for a recommendation of the low end. It said 10 months, which it recognized as the lowest possible range. The government reads out that word possible to try to argue that this is that it could recommend whatever guideline range was found. It can't. The word possible is probably the most critical word in that entire agreement. I know the court's been patient, so I don't want to belabor the point. I have just one more question as to these cases from our sister circuits. Pope v. Perdue obviously was not in the context of a direct appeal, but with EPS and Spinelli and perhaps any other cases that you have found, were the requests at that point the motions made after a year of supervisory release had passed, or were those courts really addressing the issue even before the requisite year to authorize the filing of that motion? Yes, Your Honor. I'm looking at EPS at pages 343 to 344, right at the top of 344, and it states the government notes that EPS has yet to complete one year of a supervised release term. Nothing in the text of 3583E, however, prevents a defendant from moving for a 3583E1 termination prior to the completion of his first year. Indeed, the provision is ambiguous as to whether it limits when the district court might act on that motion. It requires only that the effect of the termination begins after the expiration of one year. So it seems to me that EPS again is on point here, saying that Mr. EPS was in a similar position to Mr. Powell Ryder, namely that he was on supervised release, that he hadn't hit the magic one year mark, but that doesn't necessarily stop him from filing a motion. It wouldn't even necessarily stop the district court from granting the motion, although the district court presumably would have to grant it a year out or nine months out or whatever the amount of time was. But EPS is very clear that it's the possibility of 3583E relief that was sufficient to prevent mootness, and it's exactly on point with us, with Powell Ryder, as far as even if it's not, I guess, maybe ripe would be the correct word for decision, it could be filed. Judge Porter, Judge Fisher? No questions. Thank you both, Council, for your excellent argument today. I know we've gone for a while, and we appreciate your staying with us while we work through these very interesting and important issues. We will take the case under advisement.